[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14996

_____

D.C. Docket No. 8:11-cr-00246-JSM-EAJ-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL PETITE,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 3, 2013)

Before O'CONNOR,[*] Associate Justice Retired, and MARCUS and PRYOR,
Circuit Judges.

MARCUS, Circuit Judge:

Michael Petite challenges his sentence of 188 months' imprisonment,

followed by 3 years' supervised release, for a violation of the federal felon-in-

_____

[*] Honorable Sandra Day O'Connor, Associate Justice (Retired) of the United States Supreme
Court, sitting by designation.

possession of a firearm statute, 18 U.S.C. § 922(g)(1). Petite's sentence was enhanced by application of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The sole question the defendant has raised on appeal is whether his prior conviction for intentional vehicular flight from an authorized law enforcement patrol car in violation of Fla. Stat. § 316.1935(2) is a violent felony for ACCA purposes. After thorough review, we conclude that it is and affirm Petite's sentence.

## I.

The background facts of this appeal are not in dispute, and the issue presented is a purely legal one. Petite was arrested on December 16, 2010, as part of an undercover drug bust. After his arrest, a loaded Taurus .41 magnum revolver and a bag containing less than one gram of crack cocaine were found in the car Petite arrived in. After being read his Miranda rights, Petite admitted that the gun and the drugs in the car were his. The Bureau of Alcohol, Tobacco, Firearms and Explosives later confirmed that both the gun and the ammunition were manufactured outside of the State of Florida, and a criminal records check revealed that Petite was convicted of multiple felonies prior to the possession of the firearm and the ammunition. Petite was indicted in the United States District Court for the Middle District of Florida and charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

After the entry of a guilty plea, the United States Probation Office in a Presentence Investigation ("PSI") concluded that Petite had a base offense level of 24, see U.S.S.G. § 2K2.1(a)(2), and recommended that the district court add 4 levels because the defendant's firearm possession was in connection with another felony offense (here, possession with intent to distribute crack cocaine), see id. § 2K2.1(b)(6). The PSI also recommended a 3-level reduction for timely acceptance of responsibility, see U.S.S.G. § 3E1.1(a), (b), yielding an adjusted total offense level of 25.

However, the PSI also observed that Petite should be characterized as an armed career criminal under 18 U.S.C. § 924(e) because the instant offense was a violation of 18 U.S.C. § 922(g), and he had prior felony convictions in Pinellas County Circuit Court for three earlier offenses: (1) robbery (two counts) on January 29, 1993[1]; (2) sale of cocaine on August 17, 1998; and (3) fleeing and attempting to elude a law enforcement officer in violation of Fla. Stat. § 316.1935(2) on May 22, 2006. As an armed career criminal, Petite had an enhanced offense level of 34, which was adjusted to 31 because of a 3-level reduction for acceptance of responsibility. See U.S.S.G. § 4B1.4(b). Based on

---

[1] The two robberies form only one predicate conviction because Petite had not, in the words of the statute, committed them "on occasions different from one another." 18 U.S.C. § 924(e)(1).

Petite's criminal history category of VI, his guidelines range was 188-235 months'

imprisonment.

At issue in this appeal is only the third of the predicate convictions

supporting the armed career criminal enhancement.[2]  Petite objected to the use of

his prior vehicle flight conviction in support of an enhanced sentence both before

and during the sentencing hearing.  The district court disagreed and overruled

Petite's objection.  It applied the ACCA enhancement based on the government's

argument that the Supreme Court's decision in Sykes v. United States, which held

that a very similar Indiana vehicle flight offense was in fact a violent felony for

ACCA purposes, controlled the outcome of this case.  The district court sentenced

Petite to the minimum guidelines sentence, 188 months' imprisonment, to be

followed by 3 years' supervised release.

## II.

---

[2] The government suggests that we should affirm Petite's sentence regardless of what we decide about Florida's vehicle flight statute, because Petite has another qualifying prior conviction -- throwing deadly missiles into a building in violation of Fla. Stat. § 790.19 -- that can take the place of the vehicular flight conviction.  We need not reach this claim in light of our ruling on the vehicle flight issue, but we note in passing that the argument is unpersuasive under the procedural circumstances of this case.  The PSI -- and the district court -- relied only on the other three felony convictions in support of the ACCA enhancement, and the government at sentencing never advanced an argument that any other prior conviction listed in the PSI supported an enhanced sentence.  The government cannot offer for the first time on appeal a new predicate conviction in support of an enhanced ACCA sentence.  The argument should have been made prior to or during sentencing, allowing Petite the opportunity to object and offering the sentencing court an opportunity to fairly consider the issue in the first instance.  See United States v. Canty, 570 F.3d 1251, 1256-57 (11th Cir. 2009) ("We require litigants to make all their objections to a sentencing court's findings of fact, conclusions of law, and the manner in which the sentence was imposed at the initial sentencing hearing.  The rule applies to the defense and the prosecution alike." (citations omitted)).

Whether a defendant's prior conviction qualifies as a violent felony under the Armed Career Criminal Act is a question of law that we review de novo. United States v. Canty, 570 F.3d 1251, 1254 (11th Cir. 2009).

The question before us is whether vehicle flight in violation of Fla. Stat. § 316.1935(2) meets the federal statutory definition of a violent felony. To answer this question, we are obliged to review the Florida statute of conviction, the Armed Career Criminal Act, and the controlling Supreme Court case law interpreting the ACCA's residual clause. We begin with the text. Petite's relevant prior conviction was for a violation of Fla. Stat. § 316.1935(2):

> (2) Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 316.1935(2). For shorthand, we refer to this offense as "simple vehicle flight." The elements of simple vehicle flight are straightforward: (1) an officer in a law enforcement patrol vehicle, with its jurisdictional markings prominently displayed and its siren and lights activated, orders the motorist to stop; and (2) the motorist willfully flees or attempts to elude the officer. See id.; see also In re Standard Jury Instrs. in Crim. Cases, 73 So. 3d 136, 138-39 (Fla. 2011). Simple vehicle flight carries a maximum sentence of five years' imprisonment. Fla. Stat. § 775.082(3)(d).

5

Simple vehicle flight is a lesser included offense of the next subsection of

the Florida statute, which provides:

> (3) Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated, and during the course of the fleeing or attempted eluding:
>
>> (a) Drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
>>
>> (b) Drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, and causes serious bodily injury or death to another person, including any law enforcement officer involved in pursuing or otherwise attempting to effect a stop of the person's vehicle, commits a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 316.1935(3).  We refer to this offense as "aggravated vehicle flight."

Aggravated vehicle flight carries a maximum sentence of either fifteen or thirty

years' imprisonment, depending on whether the offender actually causes serious

bodily injury or death to another person.  Fla. Stat. § 775.082(3)(b)-(c).

The Armed Career Criminal Act, in turn, provides that a person who violates

18 U.S.C. § 922(g) and has three previous convictions "for a violent felony or a

serious drug offense" is subject to additional fines and a fifteen-year minimum

sentence (and has an enhanced guidelines sentence under U.S.S.G. § 4B1.4).  18

U.S.C. § 924(e).  The ACCA defines "violent felony" this way:

6

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that --

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

Thus, there are three basic categories of qualifying offenses. The first are those offenses that have as an element the use, attempted use, or threatened use of physical force against another person. Id. § 924(e)(2)(B)(i). The government does not contend that Florida's vehicle flight statute qualifies under this category. See Sykes v. United States, 131 S. Ct. 2267, 2273 (2011) ("Resisting law enforcement through felonious vehicle flight does not meet the requirements of clause (i) . . . ."). The second category offers a specific list of enumerated crimes: burglary, arson, extortion, and crimes involving the use of explosives. 18 U.S.C. § 924(e)(2)(B)(ii). Again, the crime at issue here is plainly not one of those. The third and more general category consists of those crimes that fit into what has come to be called the ACCA's "residual clause," see James v. United States, 550 U.S. 192, 201 (2007); and it consists of those crimes apart from the enumerated crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii).

In just the last few years, the Supreme Court has had occasion to issue four decisions exploring whether a crime qualifies as a violent felony under the ACCA's residual clause. Sykes, 131 S. Ct. 2267; Chambers v. United States, 555 U.S. 122 (2009); Begay v. United States, 553 U.S. 137 (2008); James, 550 U.S. 192. And while each subsequent decision has created new interpretive wrinkles, one thing has remained constant -- the Supreme Court's insistence that we determine whether a crime is a violent felony for ACCA purposes by means of a "categorical approach." James, 550 U.S. at 202. "Under this approach, we look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction." Id. (internal quotation marks omitted). In other words, the Supreme Court has instructed us to "consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of th[e] particular offender." Id.; accord Sykes, 131 S. Ct. at 2272; Begay, 553 U.S. at 141 ("In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."). For this reason, Petite's attempt to distinguish Sykes by distinguishing the facts surrounding Sykes'

8

conviction from the detailed facts surrounding his vehicular flight conviction is unavailing.

In order to determine whether an offense falls within the ACCA's residual clause, the Supreme Court also has instructed us to engage in a comparative inquiry. Using the categorical approach, the central inquiry is whether the offense "presents a serious potential risk of physical injury to another" comparable to the risk posed by the ACCA's enumerated crimes. Sykes, 131 S. Ct. at 2273; James, 550 U.S. at 203. The Court has observed that "a crime involves the requisite risk when 'the risk posed by [the crime in question] is comparable to that posed by its closest analog among the enumerated offenses.'" Sykes, 131 S. Ct. at 2273 (alteration in original) (quoting James, 550 U.S. at 203). Although it is not entirely obvious, in the abstract, which of the ACCA's enumerated crimes -- burglary, arson, extortion, or criminal use of explosives -- presents the "closest analog" to intentional vehicle flight, in Sykes the Supreme Court compared the risks posed by vehicle flight to the risks posed by both arson and burglary, id. at 2273-74, and, therefore, we make the same comparisons in this case.

Our comparative inquiry into risk is informed in substantial measure by the Supreme Court's analysis in Sykes. At issue in Sykes was whether the defendant's prior conviction for intentional vehicle flight in violation of Indiana's resisting law

9

enforcement statute, Ind. Code. § 35-44-3-3,[3] was a violent felony for purposes of

the Armed Career Criminal Act.  The defendant's prior conviction was for a

_____

[3] That statute, as it existed at the relevant time, provided:

> (a) A person who knowingly or intentionally:
>
>> (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer;
>>
>> (2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or
>>
>> (3) flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop;
>
> commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).
>
> (b) The offense under subsection (a) is a:
>
>> (1) Class D felony if:
>>
>>> (A) the offense is described in subsection (a)(3) and the person uses a vehicle to commit the offense; or
>>>
>>> (B) while committing any offense described in subsection (a), the person draws or uses a deadly weapon, inflicts bodily injury on another person, or operates a vehicle in a manner that creates a substantial risk of bodily injury to another person;
>>
>> (2) Class C felony if, while committing any offense described in subsection (a), the person operates a vehicle in a manner that causes serious bodily injury to another person; and
>>
>> (3) Class B felony if, while committing any offense described in subsection (a), the person operates a vehicle in a manner that causes the death of another person.

Sykes, 131 S. Ct. at 2271 (quoting Ind. Code § 35-44-3-3).

10

violation of Ind. Code § 35-44-3-3(b)(1)(A): he "use[d] a vehicle to commit the offense" of knowingly or intentionally "flee[ing] from a law enforcement officer after the officer ha[d], by visible or audible means, identified himself and ordered the person to stop."  See Sykes, 131 S. Ct. at 2271.  Notably, the Indiana statute is strikingly similar to the Florida statute at issue here, and similarly does not have as an element anything related to driving at a high speed or operating the vehicle in a reckless manner. Cf. Ind. Code § 35-44-3-3(b)(1)(B) (criminalizing as a Class D felony any of the conduct that amounts to "resisting law enforcement" when the defendant, while resisting law enforcement, "operates a vehicle in a manner that creates a substantial risk of bodily injury to another person").

The Supreme Court affirmed the judgment of the Seventh Circuit, holding that the Indiana offense at issue was a violent felony for ACCA purposes.  In exploring the nature and extent of the risk posed by intentional vehicle flight, the Supreme Court made it clear that "[r]isk of violence is inherent to vehicle flight." Sykes, 131 S. Ct. at 2274 (emphasis added); see also id. at 2273 ("When a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense."); id. at 2276 ("Serious and substantial risks are an inherent part of vehicle flight."). Moreover, the Court directly addressed and rejected the notion that vehicular flight

11

from a police officer is not sufficiently risky when the offender commits the offense without high speed or reckless driving:

> Even if the criminal attempting to elude capture drives without going at full speed or going the wrong way, he creates the possibility that police will, in a legitimate and lawful manner, exceed or almost match his speed or use force to bring him within their custody. A perpetrator's indifference to these collateral consequences has violent -- even lethal -- potential for others.

Id. at 2273 (emphasis added). The Court plainly considered the conduct of intentional vehicle flight from a police officer to be "similar in degree of danger to that involved in arson, which also entails intentional release of a destructive force dangerous to others." Id.

The Supreme Court also compared the risks attending vehicle flight to those involved in burglary:

> Another consideration is a comparison to the crime of burglary. Burglary is dangerous because it can end in confrontation leading to violence. [James, 550 U.S.] at 200, 127 S. Ct. 1586. The same is true of vehicle flight, but to an even greater degree. The attempt to elude capture is a direct challenge to an officer's authority. It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase. The felon's conduct gives the officer reason to believe that the defendant has something more serious than a traffic violation to hide.

Id. at 2273 (emphases added). Indeed, the Court concluded, "[vehicle flight] presents more certain risk as a categorical matter than burglary." Id. at 2274. The Supreme Court further observed that "[u]nlike burglaries, vehicle flights from an officer by definitional necessity occur when police are present, are flights in

12

defiance of their instructions, and are effected with a vehicle that can be used in a way to cause serious potential risk of physical injury to another." Id.; see also id. at 2279 (Thomas, J., concurring) ("[E]very violation of § 3(b)(1)(A) involves a defiant suspect with a dangerous weapon committing a felony in front of a police officer. . . . Section 3(b)(1)(A) outlaws conduct with much more risk -- a far greater likelihood of confrontation with police and a greater chance of violence in that confrontation -- than burglary." (emphasis added)).

There are sound reasons to conclude here, as the Supreme Court did in Sykes, that any form of intentional vehicle flight from a police officer presents powerful risks comparable to those presented by arson and burglary. A common theme pervading the Supreme Court's risk analysis was that, in assessing the degree of risk presented by the crime of vehicle flight, we are obliged to look beyond the driving conduct of the offender alone. The calculus also must take into account the obvious fact that vehicle flight from a law enforcement vehicle -- in direct defiance of an officer's orders -- necessarily provokes a confrontational response from the officer. See id. at 2274 ("Flight from a law enforcement officer invites, even demands, pursuit."); accord id. at 2273 ("Because an accepted way to restrain a driver who poses dangers to others is through seizure, officers pursuing fleeing drivers may deem themselves duty bound to escalate their response to ensure the felon is apprehended."). The confrontational act of simple vehicle flight

13

in violation of Florida law arises in a context where both the offender and the officer are in vehicles that can "cause serious potential risk of physical injury to another." Id. at 2274; see also id. ("Between the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes."). Moreover, the confrontation between the offender and law enforcement continues to present substantial risks even after the pursuit has ended and the vehicles have stopped moving. See id. ("And once the pursued vehicle is stopped, it is sometimes necessary for officers to approach with guns drawn to effect arrest.").

Thus, Petite's argument that a person who violates Fla. Stat. § 316.1935(2) in the ordinary case does not pose a serious potential risk of injury comparable to ACCA's enumerated crimes of burglary and arson because he "observes all traffic requirements" and "simply continues to drive without pulling over for the officer," even if accurate as a descriptive matter, was flatly rejected by the Supreme Court. Quite simply, Petite's argument fails to bake into the analysis that even less-than-extreme driving on the part of an offender during the course of vehicle flight can be expected to provoke a lawful but dangerous confrontational response from the law enforcement officer in the ordinary course of events. See Sykes, 131 S. Ct. at 2273-74.

The Supreme Court could not have been clearer in concluding that vehicle flight from a law enforcement officer is an extraordinarily risky enterprise because

14

of the dangerous confrontation between the offender and the law enforcement officer that ordinarily can be expected to ensue.  See id. at 2274 ("Confrontation with police is the expected result of vehicle flight.  It places property and persons at serious risk of injury.").

## III.

## A.

Although acknowledging the significance of the Supreme Court's decision in Sykes, Petite insists that the outcome of this case should nonetheless be different.  First, and most substantially, Petite notes that we have a prior panel opinion on all fours with the case before us.  See United States v. Harrison, 558 F.3d 1280 (11th Cir. 2009).  In Harrison, a panel of this Court held that the offense of simple vehicle flight in violation of Fla. Stat. § 316.1935(2) -- the same offense at issue here -- was not a violent felony for purposes of the Armed Career Criminal Act.  Petite claims that our prior panel decision in Harrison controls the outcome of this case in his favor.  See, e.g., Chambers v. Thompson, 150 F.3d 1324, 1326 (11th Cir. 1998) ("We are bound to follow a prior panel or en banc holding, except where that holding has been overruled or undermined to the point of abrogation by a subsequent en banc or Supreme Court decision.").  We conclude, however, that the Supreme Court's subsequent decision in Sykes so fully undermined our prior panel's decision in Harrison as to abrogate its holding.

15

Our prior panel's holding in Harrison rested on two fundamental props. The first foundational prop was the panel's conclusion that Florida's simple vehicle flight offense, as ordinarily committed, was not "roughly similar" to the ACCA's enumerated offenses in "degree of risk posed." Harrison, 558 F.3d at 1294 (quoting Begay, 553 U.S. at 143). Although not comparing simple vehicle flight to any particular one of the ACCA's enumerated crimes, the panel concluded that simple vehicle flight did not present the serious potential risk of physical injury required by the ACCA. See id. The panel acknowledged that willful vehicle flight "is a confrontational act." Id. But the panel reasoned that "[n]either high speed nor reckless driving is a statutory element of the Florida crime at issue," and that the absence of such elements "makes it unlikely that the confrontation will escalate into a high-speed chase that threatens pedestrians, other drivers, or the officer." Id.; accord id. ("[B]ecause Florida's crime in § 316.1935(2), as ordinarily committed, does not contain the elements of high speed or reckless driving, it strikes us as less likely that the offender will become violent and resist arrest."). The panel similarly said that the "disobedience" involved in simple vehicle flight "does not always translate into a serious potential risk of physical injury." Id.; accord id. ("That disobedience, without more, does not show that the offender is significantly more likely than others to attack, or physically to resist, an

16

apprehender, thereby producing a serious potential risk of physical injury."
(internal quotation marks omitted)).

The second prop on which the panel's holding in Harrison rested was that,
"[e]ven assuming a serious potential risk of physical injury exists in a
§ 316.1935(2) violation," id. at 1295, Florida's simple vehicle flight offense was
not "roughly similar . . . in kind" to the ACCA's enumerated offenses, id. at 1294
(quoting Begay, 553 U.S. at 143).  The panel in Harrison correctly described the
requirement that the Supreme Court had added to the residual clause analysis in
Begay -- namely, that the crime be similar in kind as well as in degree of risk to the
ACCA's enumerated offenses.  See id. at 1286.  The panel noted that Begay
instructed the lower federal courts that a crime is similar in kind to the ACCA's
enumerated crimes when the crime "involve[s] purposeful, violent, and aggressive
conduct."  Id. at 1287 (quoting Begay, 553 U.S. at 144-45).

Although recognizing that the "purposeful, violent, and aggressive"
formulation and the similar-in-kind requirement were nowhere to be found in the
text of the ACCA's residual clause, our prior panel applied the test as set forth in
Begay.  Id. at 1295.  The panel observed that Florida's simple vehicle flight
offense was clearly purposeful, because the statute requires willful flight.  See id.
But the panel concluded that, "without high speed or reckless conduct, [simple
vehicle flight] is not sufficiently aggressive and violent enough to be like the

17

enumerated ACCA crimes."  Id.; see also id. at 1296 ("[The] kind of person [who commits simple vehicle flight] is not, in our mind, cut from the same cloth as burglars, arsonists, extortionists, or those that criminally detonate explosives.").

Finally, Harrison recognized that this Court was entering a conflict among the circuits on how best to interpret similar vehicle flight statutes for ACCA purposes, and that our view was "at odds with all but one other circuit [the Ninth] that has addressed this issue."  Id. at 1296-97 (citing, as cases reaching a different conclusion, United States v. Roseboro, 551 F.3d 226, 234-41 (4th Cir. 2009); United States v. West, 550 F.3d 952, 960-63 (10th Cir. 2008); United States v. Spells, 537 F.3d 743, 750-53 (7th Cir. 2008); Powell v. United States, 430 F.3d 490, 491-92 (1st Cir. 2005); United States v. Kendrick, 423 F.3d 803, 808-09 (8th Cir. 2005); United States v. Martin, 378 F.3d 578, 582-84 (6th Cir. 2004); United States v. Howze, 343 F.3d 919, 921-22 (7th Cir. 2003)).

It does not go too far to say that the foundations of Harrison were demolished by the Supreme Court's subsequent decision in Sykes, which in fact arose directly out of this circuit conflict.  As for the degree of risk posed by vehicle flight, the Supreme Court rejected our prior panel's risk calculus, which had suggested that the confrontational act of vehicle flight does not necessarily "translate into a serious potential risk of physical injury" in the absence of high speed or reckless driving on the part of the offender.  Harrison, 558 F.3d at 1294.

18

As we've noted, the Supreme Court in Sykes concluded, in sharp contrast, that "[c]onfrontation with police is the expected result of vehicle flight" and that this confrontation "places property and persons at serious risk of injury." Sykes, 131 S. Ct. at 2274. Instead of focusing on whether the offender drives recklessly or at high speeds, the Supreme Court emphasized the dangers created by the law enforcement response that any act of intentional vehicle flight provokes. See id. at 2273-74. Thus, in contrast to our Harrison opinion, the Supreme Court unambiguously concluded that there are powerful risks "inherent to vehicle flight" that are at least as great as the risks presented by arson or burglary. Id. at 2274.

The Supreme Court in Sykes also eviscerated the second of Harrison's props -- that, even assuming a serious risk of injury, simple vehicle flight was not a violent felony for ACCA purposes because it was not similar in kind to the ACCA's enumerated crimes. While our prior panel applied the purposeful, violent, and aggressive test drawn from Begay and Chambers, the Supreme Court in Sykes, without overruling its prior cases, sharply curtailed the cases' reach. The Supreme Court unambiguously concluded in Sykes that the "purposeful, violent, and aggressive" formulation drawn from Begay "has no precise textual link to the residual clause" and is "an addition to the statutory text." Id. at 2275. The Court also observed that "[i]n many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk," and that, "[a]s between the two

19

inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us." Id. at 2275-76. The Court also distinguished Begay because "Begay involved a crime akin to strict liability, negligence, and recklessness crimes," and not an intentional crime like vehicle flight. Id. Lest there be any doubt about whether the Supreme Court limited Begay's "purposeful, violent, and aggressive" test to strict liability, negligence, and recklessness crimes, in this Circuit we now have precedent so holding. United States v. Chitwood, 676 F.3d 971, 979 (11th Cir. 2012) ("Because Sykes makes clear that Begay's 'purposeful, violent, and aggressive' analysis does not apply to offenses that are not strict liability, negligence, or recklessness crimes, we join the general consensus of the circuits recognizing as much. . . . At least where the previous conviction required knowing or intentional conduct, it is enough if that conviction was for a crime that generally creates as much risk of physical injury as one of the enumerated crimes."). Thus, our foundational reliance in Harrison on Begay's "purposeful, violent, and aggressive" formulation to discern whether the intentional crime of simple vehicle flight is "similar in kind" to the ACCA's enumerated crimes is simply no longer good law after Sykes. See Sykes, 131 S. Ct. at 2275-76; Chitwood, 676 F.3d at 975, 977-79.

Finally, it is not as though the Supreme Court abrogated our prior panel decision sub silentio. Rather, the Court expressly acknowledged that the opinion

20

of the Seventh Circuit under review -- and ultimately affirmed -- "was in conflict with a ruling by a Court of Appeals for the Eleventh Circuit in United States v. Harrison" and "at least in tension" with the reasoning employed by two other circuits, and that the writ of certiorari allowed the Court "to address this conflict." Sykes, 131 S. Ct. at 2272.

In short, because of the Supreme Court's analysis of the risks inherent in vehicle flight that squarely rejected the Harrison panel's risk calculus, the Court's unambiguous determination that the Begay framework no longer applies to intentional crimes like vehicle flight, and its express recognition that the opinion of the court of appeals whose judgment it affirmed was directly in conflict with Harrison, we are compelled to conclude that Harrison has been undermined to the point of abrogation by Sykes. Our prior panel's ruling is not dispositive of this appeal.

**B.**

All that is left to distinguish this case from Sykes is that the Florida statute has a gradient of penalties for different levels of vehicle flight not found in the Indiana statute in Sykes. In Sykes, the defendant thought that it was "significant that his flight conviction was not under the Indiana provision that criminalizes flight in which the offender 'operates a vehicle in a manner that creates a substantial risk of bodily injury to another person.' Ind. Code § 35-44-3-

21

3(b)(1)(B)." Sykes, 131 S. Ct. at 2276. The Supreme Court found this argument "unconvincing," but its reasoning was based primarily on the unusual structure of the Indiana statute and its identical punishments for overlapping offenses. Id. at 2276-77. The Court noted that "[t]he Government would go further and deem it irrelevant under the residual clause whether a crime is a lesser included offense even in cases where that offense carries a less severe penalty than the offense that includes it." Id. at 2277. Because Indiana's vehicle flight statute was not structured in that manner and lacked escalating tiers of punishment for different categories of vehicular flight, the Court noted that "the case at hand does not present the occasion to decide that question." Id.

Petite's reliance on this portion of the Sykes opinion to distinguish his case is understandable. Florida's statutory scheme, with its increased penalties for aggravated vehicle flight, presents the issue the Supreme Court left for another day. The Fourth Circuit, which recently held, in a decision squarely on all fours with this case, that Florida's simple vehicle flight offense qualifies as a violent felony under the Armed Career Criminal Act, also recognized as much:

> Although Sykes at first blush appears to be readily dispositive of Hudson's appeal, Hudson correctly notes that the distinction between the Florida statute under which he was convicted and the Indiana statute at issue in Sykes requires further analysis. Specifically, as Hudson points out, the Florida fleeing-or-eluding statute, unlike the Indiana statute, penalizes conduct having different levels of risk with different punishments, and, accordingly, Hudson's case presents the issue that the Supreme Court indicated in Sykes it was not deciding.

22

United States v. Hudson, 673 F.3d 263, 267 (4th Cir. 2012).

But, as we see it, there is little meaningful distinction for ACCA purposes between Florida's simple vehicle flight statute and the Indiana statute of conviction at issue in Sykes.  See id. at 267 ("Nonetheless, applying the Sykes analysis to the base offense at issue here, § 316.1935(2), inevitably leads to the conclusion that the prohibited conduct of intentional vehicular fleeing itself, without more, is a violent felony.").  We are not persuaded that the ordinary commission of Florida's simple vehicle flight offense is significantly different from the ordinary commission of the Indiana vehicle flight offense at issue in Sykes.  The elements of the Indiana offense are strikingly similar to the elements of Florida's simple vehicle flight offense, and both state legislatures separately criminalized vehicle flight from a law enforcement officer that includes as an element of the offense operating the vehicle in a manner that creates a substantial risk of injury (Indiana) or with high speed or a wanton disregard for safety (Florida).  In other words, both Florida's simple vehicle flight statute and the Indiana statute of conviction in Sykes criminalize the same basic conduct of intentional vehicle flight, without more: conduct that the Supreme Court has told us is at least as risky as arson or burglary.  See Sykes, 131 S. Ct. at 2273 ("A criminal who takes flight . . . takes action similar in degree of danger to that involved in arson, which also entails intentional release of a destructive force dangerous to others."); id. at 2274

23

("[Vehicle flight] presents more certain risk as a categorical matter than burglary.").

To be sure, we do not dispute that the ordinary commission of aggravated vehicle flight under Fla. Stat. § 316.1935(3) presents a greater level of risk than does the ordinary commission of simple vehicle flight under Fla. Stat. § 316.1935(2). But the question before us is not one of drawing the relative risks among different categories of vehicle flight; rather, it is whether the lesser offense of simple vehicle flight, in the ordinary case, nonetheless poses a substantial risk of physical injury to others comparable to the ACCA's enumerated crimes. See Sykes, 131 S. Ct. at 2273; James, 550 U.S. at 203-04; see also Hudson, 673 F.3d at 268 ("While it may be true that the conduct underlying violations of §§ 316.1935(3)(a) and 316.1935(3)(b) presents greater risks of violence and injury than does conduct underlying a violation of the base offense in § 316.1935(2), it does not follow that a violation of § 316.1935(2) does not also present a substantial risk of injury to another."). And the Supreme Court made it clear in Sykes that intentional vehicle flight from a law enforcement officer is an inherently risky offense, that the offense by definitional necessity occurs in the presence of a law enforcement officer and provokes a dangerous confrontational response from that officer, and that this confrontational response places property and persons at serious risk both during and after the pursuit, even without any reckless driving on

24

the part of the offender.  See Sykes, 131 S. Ct. at 2273-74; see also Hudson, 673 F.3d at 268 ("Even pursuits involving 'safe' drivers will almost always end in a confrontation between the driver and police.  The core dangers associated with willful vehicular flight are thus present even absent aggravating factors.").

For these reasons, we fail to see how our inquiry under the ACCA could be dispositively altered by any difference between Florida's and Indiana's punitive determinations.  See Hudson, 673 F.3d at 268 ("Given the Supreme Court's recognition of the inherent risk in intentional vehicular flight, the State's decision to punish some forms of vehicular flight more seriously than others has little bearing on the analysis.  The tiered statutory structure simply provides for increasing punishment with increasing levels of risk.").  So long as the prior conviction is for an offense that meets the statutory requirement of being a felony punishable by at least a one-year prison sentence, 18 U.S.C. § 924(e)(2)(B), as it unambiguously is here, the gradients of punishment chosen by a state legislature for escalating levels of the offense are at most tangentially related to the question the ACCA requires us to ask, which is whether the elements of the offense of conviction describe conduct that in the ordinary commission of the offense "presents a serious potential risk of injury to another." James, 550 U.S. at 208-09.  In the face of the Supreme Court's detailed analysis in Sykes regarding the substantial risks that inhere in any confrontational act of intentional vehicle flight,

25

we similarly conclude that Florida's offense of simple vehicle flight from a flashing patrol car presents a serious potential risk of physical injury comparable to the ACCA's enumerated crimes of burglary and arson. See Sykes, 131 S. Ct. at 2273-74.

Because Petite's prior conviction for vehicle flight in violation of Fla. Stat. § 316.1935(2) qualifies as a violent felony under the Armed Career Criminal Act, we AFFIRM his enhanced sentence.

**AFFIRMED.**