[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12190
Non-Argument Calendar

_____

D.C. Docket No. 3:10-cr-00191-TJC-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee

versus

WILLIE LEE DANIELS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 10, 2014)

Before TJOFLAT, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

A jury found Willie Lee Daniels guilty of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and he was sentenced as an armed career criminal to a prison term of 180 months. He appeals his conviction and sentence. He challenges his conviction on the grounds that: (1) the district court erred in denying his motion to suppress the firearm; (2) the court abused its discretion in admitting an anonymous 911 call into evidence; (3) admitting the 911 call into evidence violated his rights under the Confrontation Clause; (4) the evidence was insufficient to support his conviction; and the (5) the court abused its discretion in denying his motion for a new trial. He challenges his sentence on the ground that the court erroneously based it in part on finding that his prior conviction for aggravated fleeing and eluding constituted a violent felony under the Armed Career Criminal Act ("ACCA"). We address first and in turn the challenges to Daniel's conviction.

I.

Motion to suppress.

"As rulings on motions to suppress involve mixed questions of fact and law, the district court's factual findings are reviewed under the clearly erroneous

2

standard, while that court's application of the law is subject to *de novo* review." *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994).

In challenging a search under the Fourth Amendment, the defendant bears the burden of establishing "both a subjective and an objective expectation of privacy" in the area or object searched. *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006). "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." *Id.* "[O]nly individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007).

The facts giving rise to Daniel's motion to suppress as established at the suppression hearing. Officer Hudson received a call from the police dispatcher, who was responding to a 911 call, stating that a man was chasing a woman at gunpoint at an apartment complex. He drove to and into the complex, without siren or lights activated, and once inside the complex, he observed Daniels and a woman, later identified as Clarissa Watson, walking toward his patrol car. Although Daniels and Watson fit the dispatcher's description of the individuals referred to in the 911 call, to Hudson they "look[ed] apparently normal" and "casual." He was therefore "puzzled" and did not confront them. When he made eye contact with them,

3

however, Daniels turned and ran around the corner of a nearby building.  Hudson became suspicious that Daniels could be the man with the gun, so he drove toward Watson, exited his vehicle, and directed her to the ground, and radioed for backup.  At this point, Daniels returned from around the corner of the building; he had been gone for only a few seconds.

After arresting Daniels, Hudson went around the corner of the building where Daniels had disappeared and found a privacy fence.  Looking over the top of the fence, he saw a semiautomatic pistol, which he retrieved.  That was the firearm described in Daniels's indictment.

At the suppression hearing, Daniels testified that he had been standing beside Watson when Hudson ordered her to the ground.  Because Hudson ordered her to the ground at gunpoint, he "compl[ied]."  He testified that he had never possessed a gun that day, that he had seen the gun that he was charged with possessing only in photographs, and that he had not gone behind the building or thrown anything over the fence.

The district court, crediting Hudson's testimony and rejecting Daniels's, denied Daniels's motion to suppress on the ground that he lacked standing under the Fourth Amendment.  We conclude that the ruling did not constitute an abuse of discretion; Daniels, having denied seeing or possessing the firearm, did not have an expectation of privacy.

4

The 911 call.

We review trial court rulings admitting hearsay into evidence for abuse of discretion, *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002), and will not reverse an erroneous evidentiary ruling unless "there is a reasonable likelihood that [it] affected the defendant's substantial rights." *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990). "Hearsay" means a statement that: (1) is made by the declarant outside the current trial or hearing; and (2) is offered into evidence by a party to prove the truth of the matter asserted in the statement. Fed.R.Evid. 801(c). Hearsay is not admissible unless specifically excepted by statute or rule. Fed.R.Evid. 802. Federal Rule of Evidence 803(1) provides that statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it," also known as "present sense impressions," are exceptions to the rule against hearsay. Fed.R.Evid. 803(1); *see United States v. Scrima*, 819 F.2d 996, 1000 (11th Cir. 1987).

The district court did not abuse its discretion in admitting the anonymous 911 call because the statements constituted an exception to hearsay as the present sense impressions of the caller.

The 911 call and the Confrontation Clause.

We review *de novo* the question of whether statements are "testimonial" for purposes of the Confrontation Clause. *United States v. Lamons*, 532 F.3d 1251,

5

1261 n. 15 (11th Cir. 2008).  The Sixth Amendment protects an accused's right, in a criminal prosecution, to "be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Clause's protection applies to testimonial statements, which may include statements taken by police during interrogations.  *Crawford v. Washington*, 541 U.S. 36, 51-52, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 (2004).  .

The Supreme Court has distinguished between nontestimonial and testimonial statements in this manner:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006).

The admission of the 911 call into evidence did not infringe Daniels's rights under the Confrontation Clause because the caller's statements were nontestimonial; their primary purpose was to enable the police to meet an ongoing emergency.

Sufficiency of the evidence.

6

We review the sufficiency of the evidence *de novo*. *United States v. Maxwell,* 579 F.3d 1282, 1299 (11th Cir. 2009). In determining whether there is sufficient evidence to support a conviction, we "view the evidence in the light most favorable to the government and decide whether a reasonable fact finder could have reached a conclusion of guilt beyond a reasonable doubt." *United States v. Herrera*, 931 F.2d 761, 762 (11th Cir. 1991). "Credibility determinations are the exclusive province of the jury." *United States v. Parrado*, 911 F.2d 1567, 1571 (11th Cir. 1990). We draw all reasonable inferences tending to support the prosecution's case and assume that the jury made all credibility choices in support of the verdict. *Maxwell*, 579 F.3d at 1299.

To obtain a conviction for being a felon in possession of a firearm, the government must prove that (1) the defendant was a convicted felon, (2) the defendant knowingly possessed a firearm, and (3) the firearm was in or affecting interstate commerce. 18 U.S.C. § 922(g)(1); *United States v. Deleveaux*, 205 F.3d 1292, 1296-97 (11th Cir. 2000). "Possession can be shown by circumstantial as well as direct evidence." *Crawford*, 906 F.2d at 1535.

There was sufficient evidence to support Daniels's conviction for possession of a firearm by a convicted felon. Daniels's girlfriend, Watson, testified that Daniels took a gun from her dresser and later got rid of the gun behind a building

7

in their apartment complex.  Officer Hudson recovered a gun near that location, and Watson identified it as the gun Daniels took from her apartment.

Motion for new trial.

A district court's denial of a motion for a new trial is reviewed for abuse of discretion.  *United States v. Perez-Oliveros*, 479 F.3d 779, 782 (11th Cir. 2007).  In evaluating a motion for a new trial, the district court "may weigh the evidence and consider the credibility of the witnesses."  *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985).  However, "[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable."  *Id.* at 1312-13.  If the court concludes that the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, the court may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.  *Id.* at 1312.  Motions for new trials based on the weight of the evidence are not favored and are granted "sparingly," "with caution," and only in "exceptional cases."  *Id.* at 1313.

The district court did not abuse its discretion in denying Daniels's motion for a new trial.  The evidence of guilt was strong and did not preponderate heavily against the verdict.

II.

The Sentence**:** Aggravated Fleeing and Eluding under the ACCA.

Whether a defendant's prior conviction qualifies as a violent felony under the ACCA is a question of law that we review *de novo*. *United States v. Petite*, 703 F.3d 1290, 1292 (11th Cir. 2013). The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that . . . "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

Under Florida Statute § 316.1935(1), simple fleeing and eluding occurs when "any person . . . willfully flees or attempts to elude law enforcement in an authorized law enforcement patrol vehicle." Fla. Stat. § 316.1935(1). Under Florida Statute § 316.1935(4), a person commits aggravated fleeing or eluding when that person:

> in the course of unlawfully leaving or attempting to leave the scene of a crash . . . , having knowledge of an order to stop by a duly authorized law enforcement officer, willfully refuses or fails to stop in compliance with such an order, or having stopped in knowing compliance with such order, willfully flees in an attempt to elude such officer and, as a result of such fleeing or eluding: (a) causes injury to another person or causes damages to any property belonging to another person . . . or . . . (b) causes serious bodily injury or death to another person.

Fla. Stat. § 316.1935(4). In *United States v. Petite*, we addressed the issue of whether the Florida offense of simple fleeing and eluding constitutes a violent felony. 703 F.3d 1290, 1301 (11th Cir. 2013). We concluded that, in light of the

9

Supreme Court's detailed analysis in *Sykes v. United States*, __ U.S. __, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011), regarding the substantial risks inherent in any confrontational act of intentional vehicle flight, simple vehicle flight presented a serious risk of physical injury. *Id.*

In light of our prior determination that the Florida offense of simple fleeing and eluding presents a potential risk of injury and constitutes a violent felony, the significantly more serious Florida offense of aggravated fleeing and eluding also constitutes a violent felony.

## III.

For the foregoing reasons, Daniels's conviction and sentence are AFFIRMED.