[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10400
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cr-00055-LC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD DOUGLAS TRAVIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 4, 2014)

Before CARNES, Chief Judge, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Richard Travis appeals his 96-month sentence, imposed after he pleaded

guilty to possessing a firearm as a convicted felon.  See 18 U.S.C. § 922(g)(1).  At

sentencing, the district court calculated a base offense level of 24 under § 2K2.1(a)(2) of the United States Sentencing Guidelines because Travis had at least two prior convictions for a "crime of violence" within the meaning of the residual clause of § 4B1.2, which defines a predicate crime of violence as any felony offense that "involves conduct that presents a serious potential risk of physical injury to another." See U.S.S.G. §§ 2K2.1(a)(2), 2K2.1 cmt. n.1, 4B1.2(a)(2). The court relied on two prior felony offenses: (1) a 2006 conviction for vehicular flight from a law enforcement officer under Fla. Stat. § 316.1935(1); and (2) a 2011 conviction for aggravated assault with a weapon. With a three-level reduction for acceptance of responsibility, Travis' adjusted offense level of 21 and criminal history category of VI yielded a sentencing guideline range of 77 to 96 months imprisonment. Travis challenges the calculation of that sentencing range, contending that the district court erred in treating his conviction for vehicular flight as a crime of violence.[1]

I.

---

[1] Travis, for purposes of preservation only, also argues that the residual clause of the career offender guideline, U.S.S.G. § 4B1.2, is unconstitutionally vague. He concedes that the argument is foreclosed by binding precedent. See United States v. Gandy, 710 F.3d 1234, 1239 (11th Cir. 2013); see also James v. United States, 550 U.S. 192, 210 n.6, 127 S.Ct. 1586, 1598 n.6 (2007) ("[W]e are not persuaded . . . that the [ACCA's] residual provision is unconstitutionally vague. The statutory requirement that an unenumerated crime otherwise involve conduct that presents a serious potential risk of physical injury to another is not so indefinite as to prevent an ordinary person from understanding what conduct it prohibits.") (quotation marks and brackets omitted).

We review de novo whether a prior conviction qualifies as a "crime of violence" under the sentencing guidelines.  United States v. Lockley, 632 F.3d 1238, 1240 (11th Cir. 2011).  For purposes of § 2K2.1(a)(2), which specifically references the career offender guideline, a "crime of violence" is defined as any felony offense that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a) (emphasis added).

In determining whether a prior conviction qualifies as a crime of violence under the residual clause of the career offender guideline, we apply a categorical approach, looking "only to the fact of conviction and the statutory definition of the prior offense," and not to the "particular facts disclosed by the record of conviction."  James, 550 U.S. at 202, 127 S.Ct. at 1593–94 (quotation marks omitted).[2]  Using that approach, we must decide whether the offense "as it is ordinarily committed . . . poses a serious potential risk of physical injury that is similar in kind and in degree to the risks posed by the enumerated crimes" of burglary, extortion, arson, and those involving the use of explosives.  United States

---

[2] Because the Armed Career Criminal Act (ACCA) provides a definition of "violent felony" that is virtually identical to the definition of "crime of violence" under the career offender guideline, "decisions about one apply to other."  Gilbert v. United States, 640 F.3d 1293, 1309 n.6 (11th Cir. 2011) (en banc).

3

v. Owens, 672 F.3d 662, 968 (11th Cir. 2012) (quotation marks omitted).  The question is whether the "offense is of a type that, by its nature, presents a serious potential risk of injury to another," not whether "every conceivable factual offense covered by [the] statute . . . necessarily present[s] a serious potential risk of injury."  James, 550 U.S. at 208–09, 127 S.Ct. at 1597.

Travis was convicted under Fla. Stat. § 316.1935, which contains several subsections covering the use of a vehicle to flee or elude a police officer.  Subsection (1), the specific provision under which Travis was convicted, makes it a third-degree felony "for the operator of any vehicle, having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such order" or "willfully to flee in an attempt to elude the officer."  Fla. Stat. § 316.1935(1).  Subsection (2) also makes it a third-degree felony to "willfully flee[] or attempt[] to elude a law enforcement officer," but only where the officer is "in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed" and "with siren and lights activated."  Id. § 316.1935(2).  Finally, subsection (3) increases the penalty associated with a violation of subsection (2) where the defendant flees "at high speed" or "in any manner which demonstrates a wanton disregard for the safety of persons or property."  Id. § 316.1935(3).

The Supreme Court's decision in Sykes v. United States, — U.S. —, 131 S.Ct. 2267 (2011), and our recent decision in United States v. Petite, 703 F.3d 1290 (11th Cir. 2013), dictate the outcome of this appeal by compelling a single conclusion: vehicle flight in violation of Fla. Stat. § 316.1935(1) constitutes a crime of violence for purposes of the sentencing guidelines. In Sykes, the Supreme Court addressed whether a defendant's prior conviction for intentional vehicle flight was a "violent felony" under the residual clause of the ACCA. 131 S.Ct. at 2270–73. The defendant had been convicted under an Indiana statute that made it a Class D felony to "use[] a vehicle" to knowingly or intentionally "flee[] from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop." Id. at 2271. The Supreme Court held that a violation of that statute was categorically a violent felony under the ACCA because it presented a serious potential risk of physical injury comparable to both arson and burglary. Id. at 2273–74. The Court emphasized that the "[r]isk of violence is inherent to vehicle flight," even if "the criminal attempting to elude capture drives without going at full speed or going the wrong way," because "[c]onfrontation with police is the expected result of vehicle flight" and such confrontation "places property and persons at serious risk of injury" both during and after the pursuit. Id. at 2274 (emphasis added).

5

In Petite, we held that simple vehicle flight in violation of Fla. Stat. § 316.1935(2) is a violent felony under the ACCA.  703 F.3d at 1301.  Finding "little meaningful distinction for ACCA purposes between Florida's simple vehicle statute and the Indiana statute of conviction in Sykes," and faced with the "Supreme Court's detailed analysis in Sykes regarding the substantial risks that inhere in any confrontational act of intentional vehicle flight," we concluded that "Florida's offense of simple vehicle flight from a flashing patrol car presents a serious potential risk of physical injury comparable to the ACCA's enumerated crimes of burglary and arson."  Id. at 1300–01.  Indeed, given Syke's emphasis on "the dangers created by the law enforcement response that any act of intentional vehicle flight provokes," we noted that "there are sound reasons to conclude . . . that any form of intentional vehicle flight from a police officer presents powerful risks comparable to those presented by arson and burglary."  Id. at 1296, 1298.

Travis contends that neither Sykes nor Petite compel the conclusion that vehicle flight in violation of Fla. Stat. § 316.1935(1) is a crime of violence because "Florida decisional law" makes clear that violations of that statute, unlike violations of § 316.1935(2) or Indiana's vehicle flight statute, typically involve non-violent pursuits at low speeds over short distances.  He also argues that refusing to stop a vehicle in compliance with a police officer's order to do so is far less likely "to result in potential injury to others or a dangerous confrontation" than

6

when a defendant violates § 316.1935(2) by fleeing from a patrol car with its siren and lights activated.  We disagree.

Travis' argument that violations of § 316.1935(1) are not crimes of violence because they typically do not involve high speeds or reckless driving was flatly rejected in both Sykes and Petite.  The Supreme Court's Sykes decision made clear that vehicle flight is an inherently risky enterprise, even when it does not involve high speeds or other reckless conduct, because it can end in a violent confrontation between the offender and the police.  131 S.Ct. at 2273–74.  The Court explained:

> When a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and others drivers an inherent part of the offense.  Even if the criminal attempting to elude capture drives without going at full speed or going the wrong way, he creates the possibility that police will, in a legitimate and lawful manner, exceed or almost match his speed or use force to bring him within their custody.  A perpetrator's indifference to these collateral consequences has violent — even lethal — potential for others.

Id. at 2273.  In reaching that conclusion, the Court did not rely on statistics specific to Indiana and how its vehicle flight statute is typically violated.  Instead, it relied on the "commonsense" notion that "vehicle flights from an officer by definitional necessity occur when police are present, are flights in defiance of their instructions, and are effected with a vehicle that can be used in a way to cause serious potential risk of physical injury to another."  Id. at 2274.  The Court then bolstered its "commonsense conclusion" with nationwide, not state-specific, statistics

7

concerning the risk of crashes and injuries involved in police pursuits.  See id. (citing nationwide studies showing "that between 18% and 41% of chases involve crashes" and a 2008 study showing that 313 police pursuits over a 7-year period in 30 states resulted in injuries to police and bystanders).

Similarly, in Petite we rejected the defendant's contention that, because a typical offender of Fla. Stat. § 316.1935(2) "observes all traffic requirements" and "simply continues to drive without pulling over for the officer," the offense does not pose a serious potential risk of injury.  703 F.3d at 1296 (quotation marks omitted).  We explained that "even less-than-extreme driving on the part of an offender during the course of vehicle flight can be expected to provoke a lawful but dangerous confrontational response from the law enforcement officer in the ordinary course of events."  Id.

Contrary to Travis' invitation for us to make the crime of violence determination based on the actual conduct involved in typical Florida prosecutions for violations of § 316.1935(1), "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another."  See James, 550 U.S. at 208, 127 S.Ct. at 1597.  The Supreme Court effectively answered that question in the affirmative when it ruled that violations of a virtually indistinguishable Indiana statute, which like § 316.1935(1) criminalized the simple act of fleeing from a police officer after

8

being ordered to stop, present a serious potential risk of injury to others. <u>Sykes</u>, 131 S.Ct. at 2271–74. And we reaffirmed that conclusion in <u>Petite</u> by holding that simple vehicle flight under § 316.1935(2) is a violent felony for ACCA purposes because "<u>any</u> form of intentional vehicle flight from a police officer presents powerful risks comparable to those presented by arson and burglary." 703 F.3d at 1296.

That § 316.1935(1), unlike § 316.1935(2), does not require that the offender flee from a marked patrol vehicle with its sirens and lights activated does not meaningfully distinguish this case from either <u>Petite</u> or <u>Sykes</u>. Our decision in <u>Petite</u> did not focus on the statutory requirement that the police officer have his sirens and lights activated, but instead, on "the dangers created by the law enforcement response that <u>any</u> act of intentional flight provokes." <u>Id.</u> at 1298. And the vehicle flight statute at issue in <u>Sykes</u> was, as we have already noted, identical in every material respect to § 316.1935(1) — both statutes require nothing more than using a vehicle to flee after an officer has ordered the driver to stop. See Fla. Stat. § 316.1935(1) (prohibiting the willful failure to stop after being ordered to do so by a law enforcement officer); Ind. Code § 35-44-3-3(a)(3), (b)(1)(A) (2011) (prohibiting vehicle flight "from a law enforcement officer after the officer has . . . identified himself and ordered the person to stop").

9

Because Travis' prior conviction for vehicle flight under Fla. Stat.

§ 316.1935(1) qualifies as a crime of violence under the sentencing guidelines, we

affirm his sentence.[3]

**AFFIRMED.**

---

[3] Travis requests that we "affirm [his] conviction without prejudice to his raising an ineffective assistance of counsel claim" in a collateral proceeding under 28 U.S.C. § 2255. That request is unnecessary because a defendant may bring an ineffective-assistance claim in a § 2255 proceeding regardless of whether he could have raised it on direct appeal. See Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1694 (2003). In fact, as Travis acknowledges, we generally will not address claims of ineffective assistance of counsel on direct appeal. See United States v. Andrews, 953 F.2d 1312, 1327 (11th Cir. 1992).