[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14842
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20007-FAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FLORNOY SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 11, 2014)

ON REMAND FROM THE UNITED STATES SUPREME COURT

Before CARNES, Chief Judge, TJOFLAT and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

This appeal on remand from the Supreme Court requires us to decide

whether fleeing and eluding a law enforcement officer, Fla. Stat. § 316.1935(2), is

categorically a violent felony under the Armed Career Criminal Act, 18 U.S.C. § 924(e). We previously affirmed Flornoy Smith's enhanced sentence on the ground that his prior conviction in a Florida court for fleeing and eluding an officer was a violent felony under the Act. *See United States v. Smith*, 518 F. App'x 774 (11th Cir. 2013). The Supreme Court granted Smith's petition for a writ of certiorari, vacated our judgment, and remanded for reconsideration in the light of *United States v. Descamps*, --- U.S. ---, 133 S. Ct. 2276 (2013). *See Smith v. United States*, 134 S. Ct. 258 (2013). After reconsideration with the aid of supplemental briefs filed by Smith and the United States, we conclude that the rule in *Descamps*, which limited the use of the modified categorical approach to determine whether a prior conviction is a violent felony, does not affect the legality of Smith's sentence. Fleeing and eluding an officer is categorically a violent felony under the Act. *See United States v. Petite*, 703 F.3d 1290, 1301 (11th Cir. 2013). We affirm Smith's sentence.

## I. BACKGROUND

Smith, a convicted felon, pleaded guilty to knowingly possessing a firearm and ammunition, in and affecting interstate commerce. 18 U.S.C. § 922(g)(1). Smith had three prior felony convictions: false imprisonment, burglary of an unoccupied dwelling, and fleeing and eluding a police officer. The district court ruled that Smith's prior convictions were violent felonies and sentenced him to an

enhanced sentence of 180 months imprisonment under the Armed Career Criminal Act. 18 U.S.C. § 924(e).

Smith objected to the classification of his prior conviction for "willfully flee[ing] or attempt[ing] to elude a law enforcement officer in an authorized [and marked] law enforcement patrol vehicle . . . with [its] siren and lights activated," Fla. Stat. § 316.1935(2), as a violent felony. He argued that the Florida statute prohibited not only vehicular flight but also flight on foot, which distinguished his prior conviction from *Sykes v. United States*, --- U.S. ---, 131 S. Ct. 2267 (2011), in which the Supreme Court held that a prior conviction for vehicular flight was a violent felony under the Armed Career Criminal Act. The United States conceded that the Florida statute could conceivably prohibit both vehicular flight and flight on foot, but argued that the district court could consult the record of Smith's prior conviction, which established that Smith fled in a vehicle. The district court overruled Smith's objection and classified his prior conviction for fleeing and eluding a police officer as a violent felony "based upon the Information to which he pled guilty," which charged that Smith fled while operating a motor vehicle.

We affirmed Smith's sentence. *Smith*, 518 F. App'x at 776. We rejected Smith's argument that the United States failed to prove that he committed vehicular flight as opposed to flight on foot, and we concluded that the district court "correctly relied on the certified documents to determine the nature of

3

Smith's offense." *Id*. at 775. We also rejected Smith's argument that our decision in *United States v. Harrison*, 558 F.3d 1280 (11th Cir. 2009) (concluding that section 316.1935(2) did not qualify as a violent felony), controlled the outcome of his appeal because we had since held that "*Harrison* [had] been undermined to the point of abrogation by *Sykes*" when Smith's appeal was pending. *Petite*, 703 F.3d at 1299. In *Petite* we held that a "prior conviction for vehicle flight in violation of Fla. Stat. § 316.1935(2) qualifie[d] as a violent felony under the Armed Career Criminal Act." *Id*. at 1301. We affirmed Smith's sentence and held that "the district court did not err in treating Smith's prior conviction [under section 316.1935(2)] as a predicate offense." *Smith*, 518 F. App'x at 776.

One month after we issued our decision, the Supreme Court held in *Descamps* "that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." 133 S. Ct. at 2282. The Court explained that its precedents allowed a sentencing court to consult extra-statutory documents only when a statute contained "multiple, alternative elements" that "effectively create[d] several different crimes," *id*. at 2285, "not all of which qualify as an [Armed Career Criminal Act] predicate," and the sentencing court had to "determine which crime formed the basis of the defendant's conviction," *id*. at 2284. "The modified approach . . . ha[d] no role to play in [Descamps's] case," the Court concluded,

4

because Descamps was convicted of burglary under a California statute that did not contain alternative elements. *Id*. at 2285–86. That statute provided that "[e]very person who enters [specific locations] with intent to commit grand or petit larceny or any felony is guilty of burglary." Cal. Penal Code § 459. Because the statute omitted the element of breaking (that is, an unlawful entry), an element essential to the generic federal offense of burglary, Descamps's prior conviction did not qualify as a violent felony and could not "serve as an [Armed Career Criminal Act] predicate." *Descamps*, 133 S. Ct. at 2286. On remand, the United States concedes that the district court erred, under *Descamps*, when it applied the modified categorical approach to determine whether Smith's prior conviction for fleeing and eluding a police officer was a violent felony, but the parties disagree about whether we must vacate Smith's sentence.

## II. STANDARD OF REVIEW

We review de novo whether a defendant's prior conviction qualifies as a violent felony under the Armed Career Criminal Act. *See Petite*, 703 F.3d at 1292. When we employ the categorical approach to conclude that a crime is a violent felony under the Act, we "disregard the facts of the underlying conviction" and review the decision of the district court "look[ing] only to the elements of [a defendant's] prior conviction." *See United States v. Lockley*, 632 F.3d 1238, 1240

5

(11th Cir. 2011). We may affirm the district court on any ground supported by the record. *United States v. Hall*, 714 F.3d 1270, 1271 (11th Cir. 2013).

### III. DISCUSSION

We agree with Smith and the United States that *Descamps* established that the district court could not employ the modified categorical approach and consult additional documents to determine that Smith's prior conviction was a violent felony, *Descamps*, 133 S. Ct. at 2281–82, but we nevertheless may affirm Smith's sentence because fleeing and eluding a law enforcement officer is categorically a violent felony under the residual clause of the Act, 18 U.S.C. § 924(e)(2)(B)(ii). In *Petite*, we held that fleeing and eluding a law enforcement officer, which we described as "simple vehicle flight," is a violent felony under the Act. 703 F.3d at 1292–93, 1301. Smith attempts to distinguish *Petite* on the ground that an offender could violate the Florida statute by fleeing on foot. The United States conceded in the district court that an offender could violate the statute by fleeing on foot, but now argues that "*Petite* left no room for doubt that the statute criminalizes vehicular, not pedestrian, flight." We are not bound to accept any concessions of the United States not supported by the record or the law of our Court, *see United Sates v. Lee*, 586 F.3d 859, 866 (11th Cir. 2009), and we conduct our own analysis affirming Smith's enhanced sentence. We conclude that, based on the text of the Florida statute and other authorities, section 316.1935(2) prohibits vehicular flight,

6

but, in any event, fleeing and eluding a law enforcement officer, whether on foot or in a vehicle, is categorically a violent felony.

The whole text of the Florida statute supports our interpretation in *Petite* that section 316.1935(2) prohibits vehicular flight. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("The text must be construed as a whole."). Section 316.1935(2) is the lesser-included-offense of aggravated vehicle flight defined in section 316.1935(3). Both subsection (2) and subsection (3) prohibit "willfully flee[ing] or attempt[ing] to elude a law enforcement officer in an authorized law enforcement patrol vehicle." But subsection (3) imposes a harsher penalty for any person who, while fleeing or attempting to elude the officer, "[d]rives at a high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property." Fla. Stat. § 316.1935(3). A violation of subsection (3) necessarily requires "[d]riv[ing]" a vehicle, *id.*, and we interpret the lesser-included-offense of subsection (2) likewise to require driving a vehicle. Moreover, the statute is located in Title XXIII of the Florida Statutes, which regulates "Motor Vehicles," and chapter 316, entitled "State Uniform Traffic Control." Although the location of the statute is not dispositive, it persuades us that the statute more likely governs offenses involving motor vehicles, such as vehicular flight, and not offenses involving pedestrian flight. *See United States v. Stone*, 139 F.3d 822, 835 (11th Cir. 1998) ("As

interpretive aids . . . we can look to the title of the statute and the heading of the section in which it is introduced." (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528–29, 67 S. Ct. 1387, 1391–92 (1947))); *see also* Scalia & Garner, *supra*, at 221 ("The title and headings are permissible indicators of meaning."). In addition, a punishment for a violation of section 316.1935(2) is revocation of the offender's driver's license, Fla. Stat. § 316.1935(5), and "[a]ny motor vehicle" involved in the offender's flight "is deemed to be contraband, which may be seized by a law enforcement agency and is subject to forfeiture." *Id*. § 316.1935(7). These penalties are rationally related to the crime of vehicular flight, not pedestrian flight.

The standard criminal jury instruction adopted by the Supreme Court of Florida for section 316.1935(2) provides, as follows, that the prosecution must prove that the offender fled or attempted to elude an officer while operating a motor vehicle:

> To prove the crime of Fleeing to Elude a Law Enforcement Officer, the State must prove the following three elements beyond a reasonable doubt:
>
> 1. (Defendant) was *operating a vehicle* upon a street or highway in Florida.
>
> 2. (Defendant) knowing [he] [she] had been directed to stop by a duly authorized law enforcement officer, willfully *fled in a vehicle* in an attempt to elude a law enforcement officer.
>
> 3. The law enforcement officer was in an authorized law enforcement patrol vehicle with agency insignia and other

8

> jurisdictional markings prominently displayed on the vehicle
> and with siren and lights activated.

*In re Standard Jury Instruction in Criminal Cases—Report 2011–01*, 73 So. 3d 136, 138 (Fla. 2011) (emphasis added). Under this suggested jury instruction, a jury would not convict a defendant who flees only on foot.

We also find no support in Florida case law for Smith's interpretation that the statute prohibits flight on foot. Florida case law instead suggests that, even though an offender might initially flee in his vehicle and later escape his vehicle and continue on foot, an offender must employ a vehicle at some point in the commission of the offense. *See e.g.*, *Sanford v. State*, 872 So. 2d 406, 409 (Fla. 4th Dist. Ct. App. 2004) ("[T]here is no risk [based on the jury instructions] that the jury would believe that the fleeing and eluding felony was committed solely by Sanford's act of leaving the car and attempting to go to his residence."); *see also e.g.*, *id.* at 408–09 (distinguishing jury instructions in *Anderson v. State*, 780 So. 2d 1012 (Fla. 4th Dist. Ct. App. 2001), because the "court's concern was that Anderson risked being convicted of a third-degree felony fleeing and eluding offense solely upon proof of what occurred after he stopped [his vehicle]").

Because section 316.1935(2) prohibits only vehicular flight, we are bound by our decision in *Petite* that a prior conviction for fleeing and eluding a law enforcement officer is a violent felony. *See Petite*, 703 F.3d at 1301. We must rule, as we did in *Petite*, that under the categorical approach "intentional vehicle flight

9

from a law enforcement officer is an inherently risky offense" and "provokes a dangerous confrontational response from that officer," which "places property and persons at serious risk both during and after the pursuit." *Id.*

Alternatively, fleeing and eluding a law enforcement officer, whether in a vehicle or on foot, is a violent felony under the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii). When we employ the categorical approach, looking only to the fact of conviction and the statutory definition of the prior offense, *James v. United States*, 550 U.S. 192, 202, 127 S. Ct. 1586, 1593–94 (2007), we must conclude that fleeing and eluding an officer, whether on foot or in a vehicle, "as a categorical matter, . . . presents a serious potential risk of physical injury to another." *Sykes*, 131 S. Ct. at 2273. In *Petite*, we concluded that section 316.1935(2) shared the same serious potential risks of physical injury as those risks identified by the Supreme Court in *Sykes*, which involved an Indiana statute prohibiting flight from law enforcement. 703 F.3d at 1300–01. An offender's flight "invites, even demands, pursuit" and creates the possibility that "officers [in] pursui[t] . . . may deem themselves duty bound to escalate their response to ensure the felon is apprehended." *Skyes*, 131 S. Ct. at 2273. And "the confrontation between the offender and law enforcement continues to present substantial risks even after the pursuit has ended and the vehicles have stopped moving" because the officer might be forced to use his firearm to subdue

10

the offender. *Petite*, 703 F.3d at 1296 (citing *Sykes*, 131 S. Ct. at 2274). Our reasoning in *Petite* applies even if the statute prohibits more than vehicular flight. If the offender flees on foot, the officer is likely to pursue the offender in a vehicle because the statute states that the offender must flee "a law enforcement officer *in an authorized law enforcement patrol vehicle*." Fla. Stat. 316.1935(2) (emphasis added); *see also Petite*, 703 F.3d at 1296 ("[W]e are obliged to look beyond the driving conduct of the offender alone."). The officer's vehicular pursuit—a "confrontational response from the officer" in reaction to the "defiance of [his] orders"—creates a risk of injury even if the offender's flight is on foot. *See Petite*, 703 F.3d 1296. His "[h]eadlong flight—wherever it occurs—is the consummate act of evasion," *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000), which "gives the officer reason to believe that the defendant has something . . . serious . . . to hide" and causes the officer "to escalate [his] response." *Sykes*, 131 S. Ct. at 2273. The offender, in turn, "having chosen to flee, and thereby commit a crime, . . . has all the more reason to seek to avoid capture." *Id*. at 2274. "[S]uch an offender is significantly more likely than others to attack, or physically to resist, [his] apprehender, thereby producing a 'serious potential risk of physical injury.'" *Chambers v. United States*, 555 U.S. 122, 128–29, 129 S. Ct. 687, 692 (2009) (quoting § 924(e)(2)(B)(ii)). His flight creates countless dangers for persons in the vicinity. An offender desperate to escape might use a firearm or ensnare onlookers

11

to effectuate his escape, and the officer may employ force to capture the fleeing offender. *See Sykes*, 131 S. Ct. at 2273–74. The offender, whether on foot or in a vehicle, has created risks comparable to risks posed by arson, "which . . . entails [an] intentional release of a destructive force dangerous to others," or those posed by burglary, which is "dangerous because it can end in confrontation leading to violence." *Id*. at 2273.

The district court correctly enhanced Smith's sentence under the Armed Career Criminal Act. Under *Sykes* and *Petite*, a prior conviction for fleeing and eluding a law enforcement officer, Fla. Stat. § 316.1935(2), qualifies as a violent felony. An offender who flees or eludes a law enforcement officer in active pursuit in a patrol vehicle categorically presents a serious potential risk of physical injury to that officer and the public.

## IV. CONCLUSION

We **AFFIRM** Smith's sentence.