C O R R E C T E D   O R D E R

[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

No. 12-14842

D.C. Docket No. 1:12-cr-20007-FAM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

FLORNOY SMITH,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Florida

(November 24, 2014)

ORDER ON REHEARING EN BANC

Before ED CARNES, Chief Judge, TJOFLAT, HULL, MARCUS, WILSON, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.

BY THE COURT:

A petition for rehearing having been filed and a member of this Court in active service having requested a poll on whether this case should be reheard by

the Court sitting en banc, and a majority of the judges in active service on this

Court having voted against granting a rehearing en banc, it is ORDERED that this

case will not be reheard en banc.

CHIEF JUDGE

MARTIN, Circuit Judge, dissenting from the denial of rehearing en banc:

I respectfully dissent from the denial of rehearing en banc. Flornoy Smith's case is about whether the criminal sentence he got in federal district court, which was affirmed here on appeal, was the correct sentence. The answer to this question makes a big difference to Mr. Smith, because if we got it right, his sentence must be at least the 15 year sentence he is now serving. But if we got it wrong, the longest sentence authorized by Congress would be 10 years.

In this Court's first ruling in Mr. Smith's case, we said that his prior conviction for violating Fla. Stat. § 316.1935(2)[1] for "fleeing and eluding a law enforcement officer, whether in a vehicle or on foot, is a violent felony under the residual clause of the Armed Career Criminal Act [ACCA]." United States v. Smith, 518 F. App'x 774, 775 (11th Cir. 2013) (per curiam) (Smith I); see also 18 U.S.C. § 924(e)(2)(B)(ii) (The ACCA's residual clause for "violent felony"). As a result of this Court's characterization of the Florida Statute, Mr. Smith's mandatory minimum sentence grew to 15 years. If we had concluded that his conviction under this statute was not a violent felony, Mr. Smith would have faced

---

[1] That provision of the statute is as follows: (2) Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated commits a felony of the third degree, punishable as provided in §§ 775.082, 775.083, or 775.084.

3

a statutory maximum sentence of 10 years and a United States Sentencing Guidelines (USSG) range of 92–115 months.[2] See 18 U.S.C. §§ 924(a)(2), (e)(1).

The U.S. Supreme Court vacated this court's first ruling, and remanded Mr. Smith's case for further consideration in light of Descamps v. United States, ___ U.S. ___, 133 S. Ct. 2276 (2013). Smith v. United States, ___ U.S. ___, 134 S. Ct. 258 (2013). On remand, this Court again affirmed Mr. Smith's ACCA enhancement, but with different reasons for the ruling. United States v. Smith, 742 F.3d 949, 951 (11th Cir. 2014) (Smith II). First, the panel found that "fleeing and eluding a law enforcement officer, whether in a vehicle or on foot, is a violent felony under the residual clause of the Armed Career Criminal Act." Id. at 954. And second, the panel "[a]lternatively" interpreted the Florida statute to prohibit only vehicle flight. Id. at 952–54. I believe our most recent panel opinion does not do what the Supreme Court told us to do when it remanded the case, and that its alternative holding is flawed as well.

I will present my reasons for dissenting to the denial of en banc review as follows. First I review the development of the law on the issue of flight from the police generally and its relationship with the ACCA. Then I review the relevant procedural background of this case, discussing the first Smith opinion (Smith I),

_____

[2] Mr. Smith's total offense level was 23, criminal history category VI—without the ACCA enhancement—resulting in an advisory guideline range of 92–115 months. See USSG Chapter Five Sentencing Table.

4

then Descamps, and conclude with the second Smith opinion (Smith II), which is the subject of this dissent to the denial of rehearing en banc. I will then set out my concerns about the substance of the Court's opinion in Smith II, including both the Court's discussion of the residual clause of the ACCA, and the Court's interpretation of that statute.

## I.    FACTUAL AND LEGAL BACKGROUND

### A.    FLIGHT FROM THE POLICE AND THE ACCA

It is the "otherwise involves conduct that presents a serious potential risk of physical injury to another" language—the ACCA's so-called residual clause—that is at issue here. 18 U.S.C. § 924(e)(2)(B)(ii). This is not the first time we have been called upon to decide whether Fla. Stat. § 316.1935(2) is a violent felony under the ACCA's residual clause. In United States v. Harrison, 558 F.3d 1280 (11th Cir. 2009), the defendant argued that his prior conviction under Fla. Stat. § 316.1935(2) did not qualify as a "violent felony" under the ACCA. Id. at 1282–84. Although Harrison was a case about fleeing and eluding "in a motor vehicle," id. at 1292, 1294, 1296, 1300 n.38, we noted that "[s]ubsection 2 does not explicitly require that the offender be operating a motor vehicle." Id. at 1291 n.17. However, "[a]t oral argument, both parties assumed that the crime in § 316.1935(2) is 'ordinarily committed' by a person operating a motor vehicle." Id. Based upon the arguments made in Harrison, the decision necessarily focused on the danger

5

from fleeing a police officer in a motor vehicle. We vacated Mr. Harrison's ACCA enhancement, concluding that it was not a violent felony under the residual clause. See id. at 1301.

Our decision in Harrison became part of a Circuit split that the Supreme Court addressed in Sykes v. United States, ___ U.S. ___, ___, 131 S. Ct. 2267, 2271–72 (2011). The Indiana statute at issue in Sykes criminalized a driver of a vehicle knowingly or intentionally fleeing from a law enforcement officer. Id. at 2271; see also Ind. Code § 35-44-3-3 (2004). Sykes, like Harrison, focused exclusively on vehicle flight. See Sykes, 131 S. Ct. at 2274 ("Risk of violence is inherent to vehicle flight."); id. at 2276 ("Serious and substantial risks are an inherent part of vehicle flight."). The distinction between vehicle flight and flight on foot was made clear at oral argument in Sykes. Justice Kagan challenged the government by asking whether their position would "suggest that if I just ran from a police officer, it would be a violent felony under ACCA?" Transcript of Oral Argument at 30, Sykes, 131 S. Ct. 2267 (2011) (No. 09-11311). The government responded: "I think flight on foot is unlikely to satisfy the risk part of the test." Id. Later Justice Breyer sought to clarify some of the discussion, which appeared to be veering into the subject of fleeing on foot based on a statement by Chief Justice Roberts that "[t]here's nothing aggressive about running away." Id. at 31. Justice Breyer asked: "I thought we were dealing with a statute that says it is a crime to

6

flee a policeman after being ordered to stop, in a vehicle." Id. at 35 (emphasis added). The government answered: "That's right. That's right. That's the offense here." Id.

By a vote of 6 to 3, the Supreme Court in Sykes held that "[f]elony vehicle flight is a violent felony for purposes of ACCA." 131 S. Ct. at 2277. Justice Thomas, concurring in the judgment, explained that he agreed with the decision of the Court in part because "in every [Ind. Code] § [35-44-3-]3(b)(1)(A) flight, the perpetrator is armed with what can be a deadly weapon: a vehicle." Id. at 2279 (Thomas, J., concurring in judgment). In support of this observation, Justice Thomas cited Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769 (2007), in which the Supreme Court stated that "the threat posed by the flight on foot of an unarmed suspect" was not "even remotely comparable to the extreme danger to human life posed" by the vehicle flight in that case. Sykes, 131 S. Ct. at 2279 (quoting Scott, 550 U.S. at 383, 127 S. Ct. at 1777). Justice Thomas also cited United States v. Kendrick, 423 F.3d 803 (8th Cir. 2005), which found that "the dangerous circumstances surrounding a person's attempt to flee from law enforcement are compounded by the person's operation of a motor vehicle." Sykes, 131 S. Ct. at 2279 (quoting Kendrick, 423 F.3d at 809 (emphasis added)).

It was not long after Sykes that this Court was again presented with the question of whether vehicle flight in violation of Fla. Stat. § 316.1935(2) was a

7

violent felony for ACCA purposes. In <u>United States v. Petite</u>, 703 F.3d 1290 (11th Cir. 2013), "[t]he sole question the defendant . . . raised on appeal [was] whether his prior conviction for intentional vehicular flight . . . is a violent felony for ACCA purposes." <u>Id.</u> at 1291. We held that "<u>Sykes</u> so fully undermined our prior panel's decision in <u>Harrison</u> as to abrogate its holding." <u>Id.</u> at 1297. Therefore, we concluded that vehicle flight qualifies as a violent felony under the ACCA. <u>Id.</u> at 1301. But we could not have been more clear that <u>Petite</u> was not about flight on foot. It was about vehicle flight. The phrase "vehicle flight" appears in the opinion over 70 times, while "foot" or "feet" or "run," etc., do not appear at all.

## B.    THE FIRST <u>SMITH</u> OPINION

It was against this legal backdrop that Mr. Smith appealed his ACCA enhancement. He had pleaded guilty to the one count he was charged with, knowingly possessing a firearm and ammunition, in and affecting interstate and foreign commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). At the time of his guilty plea in federal court, Mr. Smith had been convicted of false imprisonment, burglary of an unoccupied dwelling, and fleeing and eluding a police officer. Before he was sentenced in federal court, he objected to being sentenced under the ACCA for his 2009 conviction for fleeing and eluding pursuant to Fla. Stat. § 316.1935(2). Specifically, he argued that the § 316.1935(2) conviction should not count as a violent felony under the ACCA because the

8

Information to which he pleaded guilty did not "by itself" establish that he "was driving a vehicle at the time of the offense."

The District Court overruled his objection and adopted the guideline calculations in Mr. Smith's PSR. As I have emphasized, without the ACCA enhancement, Mr. Smith's statutory maximum would have been 10 years, 18 U.S.C. § 924(a)(2), and his guideline range 92–115 months. However, the ACCA's 15-year statutory mandatory minimum increased the bottom of Mr. Smith's sentencing range to 180 months. The District Court sentenced Mr. Smith to a 180-month term of imprisonment.

In a short, unpublished opinion, this Court affirmed the District Court's finding that Mr. Smith's earlier conviction for fleeing and eluding was one that qualified him for a harsher sentence under the ACCA. Smith I, 518 F. App'x 774. The panel applied the modified categorical approach to the Florida statute and held that the District Court properly relied on various documents "to determine the nature of Smith's offense." Id. Although "the government acknowledged that a person could violate the statute by pedestrian flight," it argued that hurdle could be overcome because "certified copies of Smith's judgment of conviction and charging document proved that he fled using a vehicle." Id.

9

## C.    DESCAMPS AND SUPREME COURT REMAND

The following month the Supreme Court decided Descamps. The Court held

that "[a] court may use the modified [categorical] approach only to determine

which alternative element in a divisible statute formed the basis of the defendant's

conviction." 133 S. Ct. at 2293 (emphasis added). A divisible statute is one that

"lists multiple, alternative elements." Id. at 2285. By contrast, "sentencing courts

may not apply the modified categorical approach when the crime of which the

defendant was convicted has a single, indivisible set of elements." Id. at 2282. If a

"statute sweeps more broadly than the generic crime, a conviction under that law

cannot count as an ACCA predicate, even if the defendant actually committed the

offense in its generic form." Id. at 2283. The Supreme Court held that the

modified categorical approach had "no role to play" in examining Mr. Descamps's

conviction for burglary because the California burglary statute at issue "does not

concern any list of alternative elements." Id. at 2285. Therefore, the review of any

"approved extra-statutory documents" was not authorized. Id. at 2286.

Relying in part on Descamps, Mr. Smith filed a petition for writ of certiorari.

He argued that "the application of the modified categorical approach to Mr.

Smith's prior conviction resulted in the erroneous determination that his conviction

qualified as a predicate violent felony." Petition for Writ of Certiorari at 8, Smith,

134 S. Ct. 258 (No. 13-5257). The Supreme Court vacated the judgment of this

10

Court and remanded Mr. Smith's case "for further consideration in light of Descamps." Smith, 134 S. Ct. 258. I take this decision by the Supreme Court to suggest that the Florida fleeing and eluding statute "has a single, indivisible set of elements." See Descamps, 134 S. Ct. at 2282.

## IV.    SMITH II: OPINION AFTER REMAND

On remand, this Court described its task as deciding whether Fla. Stat. § 316.1935(2) "is categorically a violent felony under the [ACCA]." Smith II, 742 F.3d at 951. Mr. Smith argued that our decision in Petite—that vehicle flight is a violent felony for purposes of ACCA—was distinguishable because "an offender could violate the Florida statute by fleeing on foot." Id. at 953. Smith II concluded that § 316.1935(2) only prohibits vehicle flight based on factors including punishment for a violation of the statute, its location in the Florida Statutes, and the 2011 version of Florida's standard jury instructions. Id. The Smith II panel also held, alternatively, that "in any event, fleeing and eluding a law enforcement officer, whether on foot or in a vehicle, is categorically a violent felony." Id.

### A.    SMITH II'S DISCUSSION OF THE RESIDUAL CLAUSE

Smith II held that "fleeing and eluding a law enforcement officer, whether in a vehicle or on foot, is a violent felony under the residual clause of the [ACCA]." 742 F.3d at 954. But it bears repeating: the United States acknowledged during the

11

Sykes argument that "flight on foot is unlikely to satisfy the risk part of the test." Even so, Smith II concludes that the risks of flight on foot and the risks posed by arson and burglary are comparable. 742 F.3d at 955. There are no citations to any precedent on this subject. Rather, the citations are to Sykes, a case exclusively about vehicle flight. In the same way, the Smith II opinion points to no empirical data indicating that violence occurs with the same frequency for flights on foot as it does for flights by car. Neither am I aware of any empirical evidence submitted by the government to support its arguments about risk. Instead, Smith II speculates that in fleeing on foot "[a]n offender desperate to escape might use a firearm or ensnare onlookers to effectuate his escape, and the officer may employ force to capture the fleeing offender." Id. at 955 (emphasis added). But the offender might not, and the officer may not. Cf. Descamps, 133 S. Ct. at 2290 ("[T]he thing about hypothetical lists is that they are, well, hypothetical."). This type of judicial speculation about risk—without empirical backing in the record—is contrary to Supreme Court precedent. See Chambers v. United States, 555 U.S. 122, 128, 129 S. Ct. 687, 692 (2009) (holding that a state failure-to-report statute is not a violent felony under the ACCA's residual clause because, in part, it is not similar to the degree of risk of the ACCA's enumerated offenses); id. at 128–30, 129 S. Ct. at 691–93 (evaluating the risk factor by examining empirical evidence (U.S. Sentencing Commission data) and noting the government's failure to produce

12

significant empirical evidence of risk); see also Sykes, 131 S. Ct. at 2274 (relying on statistics to support the conclusion that Indiana's vehicular flight crime carries a significant risk of injury to other persons under the ACCA's residual clause); Begay v. United States, 553 U.S. 137, 153, 128 S. Ct. 1581, 1591 (2008) (Scalia, J., concurring) ("Under my interpretation of § 924(e), I must answer one question: Does drunk driving pose at least as serious a risk of physical injury to another as burglary? From the evidence presented by the Government, I cannot conclude so. Because of that, the rule of lenity requires that I resolve this case in favor of the defendant."); Harrison, 558 F.3d at 1289 ("A closer examination of James[ v. United States, 550 U.S. 192, 127 S. Ct. 1586 (2007)] and Begay demonstrates that Chambers is simply the latest in a line of Supreme Court cases that have used hard data to assist in making risk assessments under the ACCA's residual clause.").

Finding the risk posed by vehicle flight and flight on foot to be the same would not just contradict the recent statement by the United States during the Sykes argument. It would also be in tension with Supreme Court dictum worth heeding. Cf. Schwab v. Crosby, 451 F.3d 1308, 1326 (11th Cir. 2006) ("We have previously recognized that dicta from the Supreme Court is not something to be lightly cast aside." (quotation marks omitted)). For example, in Scott the Supreme Court stated that "the threat posed by the flight on foot of an unarmed suspect" was not "even remotely comparable to the extreme danger to human life posed" by the

13

vehicle flight in that case. 550 U.S. at 383, 127 S. Ct. at 1777. And the language from Kendrick that Justice Thomas approvingly cited in his Sykes concurrence states that the risk of flight is "compounded" when a vehicle is used. Sykes, 131 S. Ct. at 2279 (Thomas, J., concurring) (quoting Kendrick, 423 F.3d at 809). If the risk from flight is compounded by a vehicle, this can only mean that flight on foot is less risky.

Smith II's conclusion that flight on foot presents the same risk as vehicle flight lacks support. It is contradicted by a statement from the United States at oral argument in the Supreme Court. It lacks any empirical basis. And it is in tension with pronouncements of the Supreme Court. At a minimum, it falls short of the kind of careful and objective consideration required by Supreme Court precedent in all residual-clause cases, especially where, as here, the Supreme Court has already vacated one of our rulings and remanded this case to us for further consideration.

### B.    SMITH II'S STATUTORY ANALYSIS

I now turn to Smith II's conclusion that the Florida statute only covers vehicle flight, which led to the related conclusion that Mr. Smith's prior conviction had to have been for vehicle flight. As I've said, this conclusion flies in the face of the United States's earlier concession in this very case that the statute at issue could be violated by an offender fleeing on foot. See Smith II, 742 F.3d at 953.

14

The United States no longer stands by its concession here, after Descamps made it clear that a categorical approach was the proper one. But I also have real concerns with the panel's statutory analysis in Smith II.

####   1.    Conditional Language Regarding Punishment

Smith II relies on the language of §§ 316.1935(5) and (7), which provide certain punishments for violation of the fleeing and eluding statute, in support of its conclusion that § 316.1935(2) relates only to vehicle flight. Section 316.1935(5) states that a "court shall revoke, for a period not less than 1 year nor exceeding 5 years, the driver license of any operator of a motor vehicle convicted of a violation of . . . subsection (2)." Section 316.1935(7) states that "[a]ny motor vehicle involved in a violation of this section is deemed to be contraband, which may be seized by a law enforcement agency and is subject to forfeiture." The panel believes these sections are "rationally related to the crime of vehicular flight, not pedestrian flight." Smith II, 742 F.3d at 953.

But because the statutory language of the penalty sections is conditional, a driver's license or motor vehicle is not necessary to the offense. If, as the panel assumes, § 316.1935(2) could only relate to vehicle flight and not flight on foot, there would be no need to reference "any" motor vehicle that might be involved as contraband or to discuss revoking the license for "any" operator of a motor vehicle that might be involved. That is because those punishments are at issue only if a

15

motor vehicle is used. Cf. Restatement (Second) of Contracts § 226 cmt. a ("No particular form of language is necessary to make an event a condition, although such words as . . . 'provided that' and 'if' are often used for this purpose."). If the interpretation of the panel were correct, the statute would need only to refer to "the operator of a motor vehicle" and "the motor vehicle involved," because the statute could only be violated by the operator of a motor vehicle and there would always be a motor vehicle involved. That is not what the statute says, and it is this Court's duty to interpret the statute as it was written. See Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

### 2.    Location and Title of the Statute

Another reason the panel gives for its conclusion that § 316.1935(2) does not "govern[] . . . offenses involving pedestrian flight" is due to "the location of the statute." Smith II, 742 F.3d at 953. It acknowledges that where a statute is located "is not dispositive." Id. Nonetheless the panel is persuaded by the significance of the location of § 316.1935(2) because it "is located in Title XXIII of the Florida Statutes, which regulates 'Motor Vehicles,' and chapter 316, entitled 'State Uniform Traffic Control.'" Id.

But this interpretation ignores other parts of the chapter that make it clear that it is about more than motor vehicles. For example, the section of the chapter titled "Obedience to and effect of traffic laws" states "[t]he provisions of this

16

chapter shall apply to the operation of vehicles and bicycles and the movement of pedestrians." Fla. Stat. § 316.072(1). And in keeping with this declaration, pedestrians and various forms of non-motorized travel are discussed throughout the chapter. See, e.g., id. § 316.003(28) (defining pedestrian); id. § 316.130 (describing detailed regulations for pedestrians); id. § 316.2065 (listing regulations for bicycles); id. § 316.073 (noting regulations for animals and animal-drawn vehicles); id. § 316.075(1)(c)(2)(b) ("Unless otherwise directed by a pedestrian control signal as provided in s. 316.0755, pedestrians facing a steady red signal shall not enter the roadway."). And the statute covers an array of other matters far afield from motor vehicles, such as encouraging that land be made available for playing paintball. Id. § 316.0085(1).

The panel acknowledges that the title and headings of a statutory section can yield insight. That being the case, it is notable that the title of § 316.1935 indicates it is not limited to vehicle flight. The title of § 316.1935 could have described it as relating to "[f]leeing or attempting to elude a law enforcement officer in a motor vehicle." It did not. The drafters used that language in other titles of chapter 316, for example the section immediately following the one at issue here. See Fla. Stat. § 316.1936 ("Possession of open containers of alcoholic beverages in vehicles prohibited" (emphasis added)). When a legislature includes particular language in one section of a statute, but omits it in another, we generally presume it does so

17

intentionally.  See Keene Corp. v. United States, 508 U.S. 200, 208, 113 S. Ct.

2035, 2040 (1993).  I would apply that presumption here as well.

>    3.    The Panel's Reliance on the 2011 Standard Jury Instruction

Smith II refers to "[t]he standard criminal jury instruction . . . for section

316.1935(2)."  742 F.3d at 953.  After quoting the operative version as of 2011, the

Court states that "[u]nder this suggested jury instruction, a jury would not convict a

defendant who flees only on foot."  Id. at 954 (emphasis added).

The Court's discussion about jury instructions raises several issues.  First of

all, this case is on remand from the Supreme Court for reconsideration in light of

Descamps.  Descamps reminds us that it is only under the modified categorical

approach that we can consult a limited class of documents including jury

instructions.  133 S. Ct. at 2281.  But even setting aside the panel's use of a

standard jury instruction to determine the meaning of a statute when using the

categorical approach, I am mindful of the sizeable caveat from the Florida

Supreme Court about the suggested jury instruction quoted by the panel.  That

Court said "[i]n authorizing the publication and use of these instructions, we

express no opinion on their correctness and remind all interested parties that this

authorization forecloses neither requesting additional or alternative instructions nor

contesting the legal correctness of the instructions."  In re Standard Jury

Instructions in Criminal Cases—Report 2011-01, 73 So. 3d 136, 137 (Fla. 2011).

18

Both of these points raise concerns about the Court's reliance on the 2011 standard jury instruction.

Third, Smith II discusses a different standard jury instruction than the one in place when Mr. Smith was convicted in 2008. The standard jury instruction in place at the time he was convicted—the statutory language has remained unchanged—stated that a defendant could be found guilty under § 316.1935(2) if, after stopping his vehicle, he "willfully fled in an attempt to elude the officer." In re Standard Jury Instructions—Criminal Cases (99-1), 765 So. 2d 692, 704 (Fla. 2000). This jury instruction was "based on the text of section 316.1935(2)." Id. cmt. Given that the Florida Supreme Court has previously indicated that § 316.1935(2) supports a reading that includes fleeing on foot, and given the caution it has expressed about the current instruction, a reliance on the 2011 jury instruction by the panel is misplaced.

### 4. Plain Language Analysis

Finally, there is the plain language of the statute itself. Section 316.1935(3) refers to a person who willfully flees or attempts to elude a law enforcement officer by driving at a high speed. Section 316.1935(2), by contrast, only applies to a person who willfully flees or attempts to elude a law enforcement officer. Driving is not mentioned. The panel interpreted subsection two to require driving a vehicle despite the fact that driving is not mentioned in the subsection; not

19

mentioned in the title of the section; and at the same time, is mentioned in other subsections. The legislature could have tracked the language of § 316.1935(1), and begun subsection two with: "It is unlawful for the operator of any vehicle who willfully flees . . . ." Again, we normally presume a legislature acts with knowledge and intent of its drafting decisions. See Keene Corp., 508 U.S. at 208, 113 S. Ct. at 2040. Smith II does not explain its departure from our normal practice here, and I can think of no explanation for setting our practice aside. Although Smith II says that Florida case law "suggests that . . . an offender must employ a vehicle at some point in the commission of the offense," Smith, 742 F.3d at 954, the cases cited to support that suggestion—and others—are not conclusive. As a specific example, the panel says that in Anderson v. State, 780 So. 2d 1012 (Fla. 4th DCA 2001), the court was concerned about Mr. Anderson "being convicted of a third-degree felony fleeing and eluding offense solely upon proof of what occurred after he stopped [his vehicle]." Smith II, 742 F.3d at 954 (quoting Sanford v. State, 872 So. 2d 406, 408–09 (Fla. 4th DCA 2004)). But the sentence following the one quoted by the panel makes it clear that the court in Sanford (Anderson, too) was not suggesting that vehicle flight was required: "Under those circumstances, we concluded that the jury instruction was essentially inconsistent, in that Anderson could be convicted of the felony simply by fleeing after stopping, even if the state failed to prove that he was pursued with sirens and flashing

20

lights." <u>Sanford</u>, 872 So. 2d at 408–09 (emphasis added). Read in their full context, the cases cited by the panel do not indicate that driving a vehicle is necessary to violate § 316.1935(2), and thus the language of the statute controls.

For all of these reasons, I respectfully dissent to the denial of en banc review of the <u>Smith II</u> panel opinion, as well as the denial of relief to Mr. Smith.

21